UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

CIMC RAFFLES OFFSHORE (SINGAPORE) PTE. LTD. AND YANTAI CIMC RAFFLES OFFSHORE LIMITED,

                      Petitioners,

      v.

BAERFIELD DRILLING LLC,

                      Respondents.

13 Civ. 4932 (JSR)

---------------------------------------------------------------

CIMC RAFFLES OFFSHORE (SINGAPORE) PTE. LTD. AND YANTAI CIMC RAFFLES OFFSHORE LIMITED,

                      Petitioners,

      v.

SORATU DRILLING LLC,

                      Respondents.

13 Civ. 4933 (JSR)

---------------------------------------------------------------

### DECLARATION OF FERNANDO SCHAHIN

I, Fernando Schahin, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746:

      1. I am the Chief Financial Officer for the group of companies commonly referred to as Grupo Schahin or the Schahin Group. Unless otherwise stated, I have personal

knowledge of the information set forth herein, and if called to testify in this matter would testify as set forth herein.

2. I make this Declaration on behalf of Baerfield Drilling LLC ("BDL") and Soratu Drilling LLC ("SDL"). BDL and SDL are special purpose vehicles, incorporated in Delaware, which were formed for the sole purpose of owning, managing, and operating the SS Amazonia and the SS Pantanal, respectively. These entities do not have an office or employees in New York, and do not conduct or solicit any business in New York. Rather, these entities' entire business operations have been conducted in Brazilian waters.

A. The UK Arbitrations

3. In 2005, Petroleo Brasileiro S.A. ("Petrobras") invited bids for the long term charter and operation of two semi-submersible oil drilling units to be used off the coast of Brazil. In late 2005, Schahin submitted bids for these drilling rigs, which were accepted by Petrobras.

4. Upon acceptance of its bid by Petrobras, Schahin considered five different shipyards as potential candidates to build the drilling rigs: the YRS shipyard in China, a shipyard in Dubai, the Signal shipyard in the United States, SBM Offshore/IMCC shipyard in Abu Dhabi, and Daewoo Shipbuilding & Marine Engineering ("DSME") in Korea.

5. Representatives of Schahin first met with CIMC founder Mr. Brian Chang in mid-January 2006 in Houston, Texas. Mr. Chang initially told Schahin representatives that CIMC could not meet Schahin's requirements for the construction of the two vessels. However, in February 2006, Mr. Chang contacted Schahin representatives and informed them that due to a change in circumstances, CIMC now had the capabilities and capacity to construct the two

2

drilling vessels. A subsequent meeting between the parties was held at CIMC's shipyard in China.

6. During this period of time, CIMC made numerous representations about its capabilities. CIMC represented that it had complete, state of the art facilities, a team of capable and experienced individuals, a high performing software program called Catia which would expedite construction, and all the resources necessary to complete a project of such magnitude and complexity.

7. Based on these representations, BDL and SDL signed respective shipbuilding contracts with CIMC for the construction of the SS Amazonia and the SS Pantanal (the "Shipbuilding Contracts"). These agreements are governed by English law and specify that all disputes will be settled by arbitration in London.

8. In order to ensure they did not incur late fees under their agreements with Petrobras, BDL and SDL negotiated an explicit provision stating that "[t]ime is of the essence in the construction of the Vessel[s]." The vessels were originally scheduled for delivery on two separate dates in 2009. However, after construction of the vessels had begun, BDL and SDL each paid $6,000,000 for amendments to the Shipbuilding Contracts that accelerated the delivery dates for each.

9. Soon after construction of the vessels began, it became apparent that CIMC's shipyard was overbooked, understaffed with inexperienced personnel, and that CIMC did not have previous experience with Catia.

3

10. Due to capacity constraints at its own shipyard, and concerns regarding the increasing delays in construction, CIMC made arrangements for a substantial portion of the construction of the drilling rigs to be carried out at two shipyards in Dalian and Haiyang.

11. On December 18, 2009, Schahin Holding S.A. ("Schahin Holding") entered into a Deed of Guarantee and Indemnity with CIMC to guarantee certain payments due by BDL and SDL that had been deferred until after delivery of the vessels.

12. The SS Pantanal and SS Amazonia were not delivered until November 15, 2010 and April 25, 2011, respectively, more than one and two years beyond their respective delivery deadlines, as a result of which BDL and SDL incurred significant penalties under their contracts with Petrobras.

13. The vessels, as delivered, were also incomplete, and BDL and SDL had to expend further substantial sums to hire third parties to complete the vessels. This resulted in a further eight-month delay for the SS Amazonia and four-month delay for the SS Pantanal.

14. In December 2011, CIMC commenced two arbitrations in London against BDL and SDL (the "UK Arbitrations"), seeking $43.7 million plus interest, which they claimed was for unpaid portions of the vessels' purchase price and other sums allegedly due under the Shipbuilding Contracts. BDL and SDL cross-claimed for damages totaling $360 million, based on CIMC's misrepresentations, deceit, and breach of contract. As a result of CIMC's substantial defaults under the Shipbuilding Contracts, BDL and SDL do not believe they are liable for any unpaid amounts, since the damages caused by CIMC far exceed the amounts claimed by CIMC.

15. Attached hereto at Exhibit A is a true and correct copy of BDL's Points of Claim and SDL's Points of Claim from the UK Arbitration.

16. Attached hereto at Exhibit B is a true and correct copy of Petitioners' Position Paper for the Procedural Hearing on November 14, 2012.

17. Attached hereto at Exhibit C is a true and correct copy of Petitioners' Opening Submissions for the Preliminary Issues.

18. As part of the UK Arbitrations, the parties are undergoing an extensive disclosure exercise. BDL and SDL will produce several hundred thousand documents, and CIMC indicated that it will produce approximately 400,000 documents.

19. The parties were originally scheduled to exchange their disclosure on July 5, 2013, and BDL and SDL were prepared to do so. However, as it became apparent that CIMC was not prepared to complete their review by this date, this date was first postponed to August 2, 2013. The Petitioners have since sought to further postpone the date, and the Respondents await confirmation from the Petitioners as to when they will be in a position to exchange disclosure.

20. On June 21, 2013, BDL and SDL filed an application to the High Court of Justice, Queen's Bench Division, Commercial Court, in London, United Kingdom under section 68 of the Arbitration Act 1996 to challenge the Interim Final Arbitration Awards "on the ground of serious irregularity affecting the Tribunal, the proceedings and the Awards." Attached hereto at Exhibit D is a true and correct copy of that application. As part of that application, BDL and SDL also requested an order that enforcement of the approximately $16 million plus interest

partial awards be stayed pending the determination of the application to the Tribunal. The hearing for that stay application has now been scheduled for Friday, November 8, 2013.

21. Attached hereto at Exhibit E is a true and correct copy of Lars Thomas Lidstrom's second witness statement submitted in support of these applications.

22. A full merits hearing is scheduled to be held on March 2014, to address the remaining amounts claimed by CIMC (US $27,771,933 plus interest), as well as BDL's and SDL's counterclaims.

B.  **BDL and SDL Have Only Fortuitous Contact With New York**

23. All of BDL's and SDL's revenue is derived from their charter and service agreements with Petrobras. Those agreements identify Rio de Janeiro as the appropriate venue for any disputes.

24. The only assets that BDL and SDL have in New York are twelve project accounts which their parent company, Black Gold Drilling LLC ("Black Gold"), provided as part of the collateral package provided to the lenders who supplied project financing for the construction of the drillships.

25. In total there are forty-two project accounts, only twelve of which are held in BDL's and SDL's name in New York at Deutsche Bank Trust Company Americas ("Deutsche Bank"). Each of these project accounts has a specific payment purpose, such as for interest payments, principal payments, payment of operation and maintenance expenses (including but not limited to payroll, insurance costs, government fees, and professional fees), capital expenditures, and the funding of reserve amounts. These project accounts were established to

6

provide security for the consortium of lenders who had provided the project financing to Black Gold. Each month, the Withdrawal Certificates necessary to initiate the offshore waterfalls are submitted by Black Gold and Schahin Engenharia, not BDL or SDL. Therefore, only the administrative agent (not BDL or SDL) has control over the project accounts. Furthermore, no funds from any of these forty-two accounts flow to either BDL or SDL at any step in the monthly waterfall.

C.  **The UK Partial Summary Judgment Award**

26. In a separate proceeding between CIMC and Schahin Holding S.A. ("Schahin Holding") based on a Deed of Guarantee and Indemnity, entered into on December 18, 2009 and governed by English law, CIMC won a partial summary judgment award of $53,353,71, plus interest, on May 21, 2012.

27. On June 7, 2013, the UK Court of Appeals unanimously reversed the partial summary judgment award in its entirety. Attached hereto at Exhibit F is a true and correct copy of this order. Shortly thereafter, Schahin Holding filed a letter to Honorable Justice Coin of the New York Supreme Court, Commercial Division, requesting that CIMC's Motion for Summary Judgment in Lieu of Complaint Seeking Domestication of a UK Final Foreign Country Money Judgment be dismissed. Attached hereto at Exhibit G is a true and correct copy of this letter. On July 2, 2013, Justice Coin granted this request. Attached hereto at Exhibit H is a true and correct copy of this order.

Dated:    São Paulo, Brazil
             August 7, 2013

Signed at São Paulo, Brazil under penalty of perjury under the laws of the United States of America,

By: _____
Fernando Schahin