IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CIMC RAFFLES OFFSHORE (SINGAPORE) PTE. LTD. AND YANTAI CIMC RAFFLES OFFSHORE LIMITED,<br><br>Petitioners,<br><br>v.<br><br>BAERFIELD DRILLING LLC,<br><br>Respondent. | 13 Civ. 4932 (JSR)<br>ECF Case |
| CIMC RAFFLES OFFSHORE (SINGAPORE) PTE. LTD. AND YANTAI CIMC RAFFLES OFFSHORE LIMITED,<br><br>Petitioners,<br><br>v.<br><br>SORATU DRILLING LLC,<br><br>Respondent. | 13 Civ. 4933 (JSR)<br>ECF Case |

**DECLARATION AND EXPERT OPINION ON ENGLISH LAW OF**

**HUGH WILLIAM AMHERST CECIL**

1

## I. SUMMARY OF QUALIFICATIONS OF AUTHOR

1. I am a solicitor of the senior courts and a partner in the firm of Curtis Davis Garrard LLP, 29 Ludgate Hill, London, EC4M 7JR. I have practiced law in the United Kingdom for nineteen years. I specialize in maritime and construction litigation and arbitration matters for clients in the shipping, offshore oil and gas and energy industries.

2. I am acting for CIMC Raffles Offshore (Singapore) Pte. Ltd. and Yantai CIMC Raffles Offshore Limited (collectively, "CIMC Raffles") in two legal proceedings against Baerfield Drilling LLC ("BDL") and Soratu Drilling LLC ("SDL") that are taking place in London, United Kingdom, namely two arbitrations seated in London and being heard concurrently pursuant to the rules of the London Maritime Arbitrators Association ("Arbitrations"), as described further below.

3. Save as otherwise indicated, the statements herein are made from my own personal knowledge and are true. Where statements are not within my personal knowledge, they have been derived by me from my review of the papers in this case or from the source indicated, in which case I believe them to be true.

## II. OPINION

### A. Background – the Tribunal's Awards and the Respondents' Applications

4. On 24 May 2013, the Arbitration Tribunal appointed to hear the Arbitrations (the "Tribunal"), and composed of three Queens' Counsel, issued two Interim Final Arbitration Awards in the Arbitrations (with minor clerical corrections dated 28 June 2013) ("Awards"). In the Awards, the Tribunal ordered BDL to pay the sum of US$11,030,316.80, plus applicable interest, and SDL was ordered to pay the sum

of US$4,943,513.52, plus applicable interest. The Awards also dismissed the Respondents' claim for a right of set off based on cross claims they asserted. The Awards are final in respect of these matters.

5. In the SDL Award, the Tribunal determined it did not have jurisdiction to hear CIMC Raffles' claim to collect part of the SDL Contract Price which was deferred under a security assignment dated 28 October 2010. CIMC Raffles will be commencing a UK High Court action to collect those sums under the security agreement.

6. Following publication of the Awards, the Respondents filed applications to the Tribunal (under section 57 of the Arbitration Act 1996 as applicable in England and Wales (the "Act")) and, shortly thereafter, to the High Court (under section 68 of the Act). In their applications to the Tribunal, the Respondents sought, in short, clarification that the Tribunal was not expecting (or ordering) payment to be made by the Respondents in the absence of provision of a bank guarantee by CIMC Raffles in the amount of the Awards as a countersecurity to payment of the awarded amounts. The Respondents' request seems to have stemmed from their assertion that such a reservation was required as a result of CIMC Raffles' concession and/or offer.

7. The Tribunal categorically rejected the Respondents' applications stating that there was no contractual obligation on the part of CIMC Raffles to provide such a bank guarantee, nor had the Respondents asserted at the hearing that CIMC Raffles' offer amounted to a separate legally enforceable promise. Specifically, the Tribunal held that CIMC Raffles' offer or promise to provide a countersecurity was gratuitous in the sense that CIMC Raffles was not obliged to do so pursuant to the underlying contracts. The

Tribunal thus declined to amend the Awards in accordance with the Respondents' requests.

### B. The Potential impact of the Respondents' Applications to the High Court

8. In their applications to the High Court under section 68 of the Act, the Respondents sought an order (i) setting aside the paragraphs of the Awards solely relating to this specific issue of a bank guarantee, (ii) declaring that those same paragraphs are of no effect and/or (iii) remitting the Awards to the Tribunal for reconsideration. The Respondents also sought from the High Court an order staying any enforcement of the Awards pending the resolution of the bank guarantee question by the High Court and/or the Tribunal. The Act provides the parties the opportunity to seek leave to appeal any ruling the High Court issues on the section 68 applications.

9. Notably, the Respondents did not appeal the Awards on merits or law (including the amount of and reasons for the Awards). Any such right of appeal to the High Court on a point of law was expressly excluded in the arbitration clause contained in the underlying contracts. The Awards thus are not subject to further review.

10. As to the Respondents' substantive application under section 68 of the Act, as already noted this only purports to address a narrow issue of countersecurity as to the cross-claims they assert against CIMC Raffles. That application does not affect the substantive findings or finality of the Awards. There is no dispute about the fact that the Respondents now owe the amounts set forth in the Awards.

11. Even if ultimately successful—and, as discussed below, the merits of the applications are very weak—the Respondents' limited challenge to the selected paragraphs of the Awards dealing with the countersecurity could only result in imposing

upon CIMC Raffles an obligation to provide a countersecurity. In that event, the High Court would simply remit the Awards to the Tribunal to set the amount and terms of the countersecurity. The net result will be that CIMC Raffles will remain free to enforce the Awards once it had provided the countersecurity which it previously offered to provide.

12. The Respondents' "stay" application before the High Court is also narrowly tailored to seek an order "that *enforcement* of paragraph (ii) on page 3 of the Awards be stayed pending the determination of . . . the section 68 application and/or that [CIMC Raffles] take no steps to *enforce* paragraph (ii) on page 3 of the Awards." (Paragraph 1(b) of the Schedule to the Respondents' Claim Form filed before the High Court, dated 21 June 2013, attached hereto as Exhibit A for the Court's reference.) (emphasis added). Again, the application does not seek to overturn the Award. As of today, since that application has not been granted, there is no stay of enforcement.

### C. Weakness of the Respondents' Applications

13. The Respondents' limited claim before the High Court is weak and the Awards are manifestly valid. Section 68 of the Act requires the Respondents to establish that the Tribunal committed "serious irregularities" that have or will cause them "substantial injustice." In their application to the High Court, the Respondents argued, *inter alia*, that the Tribunal (a) did not comply with its general duty under section 33 of the Act, namely to act fairly and impartially as between the parties, giving each party a reasonable opportunity of putting its case and dealing with that of its opponent and adopting procedures suitable to the circumstances of the particular case (b) exceeded its powers, and (c) failed to conduct proceedings in accordance with the procedure agreed to by the parties. In particular, and in short, the Respondents asserted that the Tribunal

disregarded CIMC Raffles' "admission and/or concession and/or offer" to provide such guarantee and did not give the Respondents an opportunity to properly address it on this approach. For reasons set forth in my First Witness Statement before the High Court, dated 2 August 2013 (attached hereto as Exhibit B for the Court's reference) ("Cecil 1"), a summary of which is provided in paragraphs 14 – 17 below, these claims are very weak and seem raised by the Respondents as another delay tactic of last resort.

14. First, the record clearly demonstrates that the Tribunal gave the Respondents opportunities during oral argument to address the point. English law is clear in disallowing a party, which was disinclined to properly address certain points when given an opportunity, to use its missed opportunity as a valid ground for a section 68 application: *Terna Bahrain Holding Co WLL v. Al SHamsi* [2013] 1 Lloyd's Rep. 86 at para 106. In this case, the Respondents had ample opportunity to raise the bank guarantee matter before the Tribunal, and the Tribunal had sufficient grounds to impartially and unambiguously reject the Respondents' request to create a countersecurity obligation where none was required pursuant to the underlying contracts.

15. Second, the Respondents' application seemed an attempt to re-open the issue of whether, purely as a matter of construction of the relevant provisions of the underlying contracts, CIMC Raffles was contractually entitled to payment of the sums awarded without having to provide a countersecurity. However, and having addressed this in Cecil 1, the Respondents' reply (set out in the Third Witness Statement of Lars Thomas Lidstrom before the High Court, dated 9 August 2013 and attached hereto as Exhibit C for the Court's reference) made clear that they do not seek to have the Awards

remitted to the Tribunal for it to reconsider the conclusions it reached on a proper construction of the relevant provisions.

16. Third, the Respondents' application asserts—without substantiation—that CIMC Raffles' offer to provide a bank guarantee was somehow binding upon the Tribunal. As already noted above, the Tribunal unyieldingly ruled that it was not bound by any such offer, and reconfirmed that CIMC Raffles' offer to provide a countersecurity had no bearing on the Tribunal's reasoning and findings.

17. It is a well-established concept in English Law that section 68 applications are intended to be "only available in extreme cases where the tribunal has gone so wrong in its conduct of the arbitration that justice calls out for it to be corrected.": *Compania Sud-Americana De Vapores SA v. Nippon Yusen Kaisha* [2009] EWHC 1606 at para. 40. English courts are extremely reticent to interfere with the arbitral process and section 68 applicants face a very high burden in establishing both "serious irregularity" and "substantial injustice". In this case, the record is abundantly clear that (A) there was no serious irregularity affecting the Tribunal and (B) in any event, the Respondents have not even come close to showing that any irregularity (in the manner that that the Tribunal dealt with the issue of countersecurity) has caused or will cause the Respondents substantial injustice. Therefore, I do not believe that this case comes close to an extreme case where the Tribunal has gone so wrong in its conduct of the arbitration that justice calls out for it to be corrected and, accordingly, the Respondents' applications are very weak.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 27, 2013.

                                                          Hugh William Amherst Cecil