UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

CIMC RAFFLES OFFSHORE (SINGAPORE) PTE. LTD. and YANTAI CIMC RAFFLES OFFSHORE LIMITED,

                              Petitioners,

                    v.

BAERFIELD DRILLING LLC,
SORATU DRILLING LLC

                              Respondents.

13 Civ. 4932 (JSR)

13 Civ. 4933 (JSR)

------------------------------------------------------------x

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF RESPONDENTS BAERFIELD DRILLING LLC AND SORATU DRILLING LLC'S MOTION TO DISMISS THE PETITIONS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

ARGUMENT .............................................................................................................................. 1

I.   RESPONDENTS ARE NOT SUBJECT TO EITHER GENERAL OR SPECIFIC PERSONAL JURISDICTION IN NEW YORK .................................................................. 1

    A.   Neither Respondents' Bank Accounts Nor Their Engagement In Two Discrete Transactions Constitutes "Presence" Sufficient For General Personal Jurisdiction In New York ........................................................................................ 2

        1.   Bank Accounts ................................................................................................. 2

        2.   Unrelated Dispute Resolution Clauses Do Not Establish Jurisdiction ............. 5

    B.   Petitioners Fail To Demonstrate That The Black Gold Project Or The ECAs Are An "Articulable Nexus" Sufficient To Establish Specific Jurisdiction ................. 6

II.  IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS PROCEEDING ............ 9

CONCLUSION ......................................................................................................................... 10

# TABLE OF AUTHORITIES

Page

## CASES

*A.C.K. Sports, Inc. v. Doug Wilson Enters., Inc.*,
661 F. Supp. 386 (S.D.N.Y. 1987) ........................................................................... 7

*Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*,
No. 90 Civ. 4169 (JFK), 1990 WL 213030 (S.D.N.Y. Dec. 18, 1990), *cert. denied*, 504
U.S. 910 (1992) ....................................................................................................... 10

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*,
156 F.3d 310 (2d Cir. 1998) ..................................................................................... 10

*Georgia-Pacific Corp. v. Multimark's Int'l Ltd.*,
706 N.Y.S.2d 82 (1st Dep't 2000) ..................................................................... 2, 3, 4

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*,
131 F. Supp. 2d 544 (S.D.N.Y. 2001) ....................................................................... 7

*Johnson v. Ward*,
829 N.E.2d 1201 (N.Y. 2005) .................................................................................... 6

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*,
918 F.2d 1039 (2d Cir. 1990) ............................................................................ 2, 3, 4

*MGM Prods. Grp., Inc. v. Aeroflot Russian Airlines*,
No. 03 Civ. 0500 (RMB), 2003 WL 21108367 (S.D.N.Y. May 14, 2003), *cert. denied*,
543 U.S. 956 (2004) ................................................................................................ 10

*Masonite Corp. v. Hellenic Lines, Ltd.*,
412 F. Supp. 434 (S.D.N.Y. 1976) ............................................................................ 4

*Mattgo Enters., Inc. v. Aaron*,
374 F. Supp. 20 (S.D.N.Y. 1974) .............................................................................. 8

*McGowan v. Smith*,
419 N.E.2d 321 (N.Y. 1981) ..................................................................................... 6

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Noonan*,
No. 92 CIV. 3770 (SWK), 1992 WL 196741 (S.D.N.Y. Aug. 3, 1992) .................... 8

*Moscato v. Tie Techs., Inc.*,
No. 04 CIV. 2487 (GBD), 2005 WL 146806 (S.D.N.Y. Jan. 21, 2005) .................... 5

*Nat'l Sun Indus., Inc. v. Dakahlia Commercial Bank, Cairo*,
113 F.3d 1229, 1997 WL 218789 (2d Cir 1997)..................................................................2

*Phillips v. Audio Active Ltd.*,
494 F.3d 378 (2d Cir 2007)..................................................................................................5

*Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*,
765 N.Y.S.2d 575 (1st Dep't 2003)......................................................................................5

*Sterling Nat'l Bank & Trust Co. of N.Y. v. S. Scrap Export Co.*,
468 F. Supp. 1100 (S.D.N.Y. 1979)......................................................................................5

*Talbot v Johnson Newspaper Corp.*,
522 N.E.2d 1027 (N.Y. 1988)...............................................................................................6

*United Rope Distribs., Inc. v. Kimberly Line*,
785 F. Supp. 446 (S.D.N.Y. 1992)...................................................................................2, 3

*United Rope Distribs., Inc. v. Kimberly Line*,
770 F. Supp. 128 (S.D.N.Y. 1991)........................................................................................2

*United Trading Co. v M.V. Sakura Reefer*,
No. 95 CIV. 2846 SAS, 1996 WL 374154 (S.D.N.Y. July 2, 1996) .....................................4

## **STATUTES & RULES**

CPLR 302........................................................................................................................6, 7

## **OTHER AUTHORITIES**

N.Y. Jur. 2d Courts and Judges § 591....................................................................................5

Petitioners' motion for recognition of interim awards issued in arbitrations pending in London is premature and procedurally improper. The Respondents, whose primary purpose is to charter two drill ships for Petroleo Brasiliero S.A. ("Petrobras") in Brazilian waters, are not subject to general personal jurisdiction because they are not "doing business" in New York, and they are not subject to specific jurisdiction in the State because this cause of action is unrelated to any connection they have with New York. Accordingly, the petitions should be dismissed for want of personal jurisdiction. Even if the petitions are not dismissed, these proceedings should be stayed pending resolution of the Respondents' challenge to the interim awards in the English courts. Although the Petitioners assert that the awards are final and the Respondents' challenge is "weak," the Petitioners' own actions and statements demonstrate exactly the contrary.

## ARGUMENT

### I. RESPONDENTS ARE NOT SUBJECT TO EITHER GENERAL OR SPECIFIC PERSONAL JURISDICTION IN NEW YORK

The Petitioners make three arguments to contend that Respondents are subject to personal jurisdiction in New York. None are correct. First, Petitioners' assertion that BDL and SDL are subject to general jurisdiction in New York based on the presence of project-financing bank accounts here is incorrect, as the Respondents have no control over any accounts in New York, and under well-settled New York law the mere presence of such accounts does not establish personal jurisdiction. Second, the Respondents' submission under two unrelated contracts to arbitrate or litigate in New York is insufficient to constitute a submission to general jurisdiction in New York. Third, the Black Gold project and the Advance and Equity Conversion Agreements ("ECAs") lack an articulable nexus to the UK interim awards, issued under English-

law governed shipbuilding contracts, and thus do not subject BDL or SDL to specific personal jurisdiction in New York.

### A. Neither Respondents' Bank Accounts Nor Their Engagement In Two Discrete Transactions Constitutes "Presence" Sufficient For General Personal Jurisdiction In New York

#### 1. Bank Accounts

The two cases cited by Petitioners, *United Rope Distributors, Inc. v. Kimberly Line*, 770 F. Supp. 128 (S.D.N.Y. 1991), and *Georgia-Pacific Corp. v. Multimark's Int'l Ltd.*, 706 N.Y.S.2d 82 (1st Dep't 2000), do not undercut the well-established rule under New York law that the mere presence of bank accounts in the state is insufficient to establish general jurisdiction over a defendant. *See Natl'l Sun Indus., Inc. v. Dakahlia Commercial Bank, Cairo*, 113 F.3d 1229, 1997 WL 218789, at *1 (2d Cir 1997) ("The maintenance of an active correspondent bank account in New York does not, without more, demonstrate a foreign corporation's 'presence' in New York."). More importantly, Petitioners ignore that the decisions in both *United Rope* and *Georgia-Pacific* turned on the level of control the defendants exercised over the accounts at issue in those cases, control that the Respondents in this case clearly lack.

The importance of control was emphasized by the *United Rope* court. On rehearing, that court elucidated its prior opinion by discussing the defendant's interactions with its New York bank. *United Rope Distribs., Inc. v. Kimberly Line*, 785 F. Supp. 446, 450 (S.D.N.Y. 1992). The court found that the defendant had contacted the managing agent "countless times in getting funds quickly to various destinations," and the defendant itself referred to the account's managing agent as the defendant's "New York agent." *Id.* The court contrasted the Court of Appeals' decision in *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990), which found that the presence of a local bank account alone does not amount to "doing business" in New York, and held that control was the

2

determining factor, noting that in *Landoil*, "the court emphasized that the defendant could not deposit or withdraw money" from the account. *United Rope*, 785 F. Supp. at 451. Similarly, in *Georgia-Pacific*, which relies for its holding exclusively on *United Rope*, the issue was one of control. *See Georgia Pacific*, 706 N.Y.S.2d at 84 (holding that general jurisdiction may be found where a corporation directs "all uses of [a New York] bank from a foreign office without the need for sending an actual agent to New York.").

As Respondents demonstrated in their motion to dismiss, and as the Petitioners do not and cannot refute, BDL and SDL do not have control over the Black Gold project accounts. As the Court noted in its April 30 and August 6 orders, "only [the Administrative Agent] and [the Collateral Agent] . . . can exercise control [over] the withdrawal and transfer of funds under the terms of the contractual waterfalls." April 30 Order at 7; August 6 Order at 4. Petitioners attempt to obfuscate this fact by incorrectly asserting, in a footnote, that Respondents "make deposits, direct investments, and transfer funds" from the six accounts held in each of their names as well as the other accounts in the project financing structure. Petitioners' Response at 14 n.4. This is patently untrue.

The Collateral Agency Agreement, pursuant to which the accounts were established and are operated, delineates BDL's and SDL's lack of control over their respective six accounts. Petitioners highlighted the Offshore BDL and SDL Revenue Accounts, asserting that Respondents are "authorized to make transfers . . . to the other payment accounts." Petitioners' Response at 10. But the BDL and SDL Charter payments from Petrobras are automatically deposited into these accounts, Declaration of Fernando Schahin ("Schahin Dec'l") ¶ 4, and only Deutsche Bank (as Depositary) is authorized to transfer the funds in these accounts to the Offshore Revenue Account, which is held in the name of Black Gold. *See* Declaration of

3

Jared Brenner ("Brenner Dec'l") at Ex. A (Collateral Agency Agreement § 4.03(b)-4.04(b)) [Docket No. 37-1]. The Respondents have no right to control or direct such payments. *Id.*; *see United Trading Co. v. M.V. Sakura Reefer*, No. 95 CIV. 2846 SAS, 1996 WL 374154, at *2 (S.D.N.Y. July 2, 1996) (finding no general jurisdiction where "the sole function of the New York [bank] was to automatically deposit" money into another account, and where defendant "had no rights of deposit or withdrawal" against the New York account).

The five other accounts held by each Respondent were created for limited purposes and have long been dormant.[1] Contrary to Petitioners' assertions, financing payments (principal and interest) to the Senior Lenders and offshore operating expenses to Schahin Engenharia are paid out of accounts held in the name of Black Gold (the "Offshore Revenue Account," "BDL Offshore Operating Account," and "SDL Offshore Operating Account"), *not* Respondents. Brenner Dec'l at Ex. A (Collateral Agency Agreement § 2.02).

Unlike the defendants in *United Rope* or *Georgia-Pacific*, which regularly ordered their banks to make transfers and payments out of the accounts in question, BDL and SDL are unable to exercise *any* control over the project accounts. Indeed, the Withdrawal and Transfer Certificates which govern the monthly waterfalls are signed and submitted solely by Black Gold and Schahin Engenharia, not by BDL or SDL. Declaration of Fernando Schahin [Docket No. 13] ¶ 25. As affirmed by the Court of Appeals in *Landoil*, BDL's and SDL's lack of control over the accounts dictates that they are not subject to general jurisdiction in New York based on the presence of bank accounts in the state. *See Masonite Corp. v. Hellenic Lines, Ltd.*, 412 F. Supp. 434, 438 (S.D.N.Y. 1976) (finding no basis for general jurisdiction where monies

---

[1] Aside from the Offshore BDL and SDL Revenue Accounts, the other accounts held in the name of Respondents (five each) have had no activity in 2013. *See* Schahin Dec'l ¶ 3; Brenner Dec'l at Ex. A (Collateral Agency Agreement § 2.02(b)-(c)). Six of these accounts have seen no activity in the past three years, and the other four accounts were last active in mid-2012. *See* Schahin Dec'l ¶ 5.

4

from New York bank account were immediately credited to London bank); *Moscato v. Tie Techs., Inc.*, No. 04 CIV. 2487 (GBD), 2005 WL 146806 (S.D.N.Y. Jan. 21, 2005) (finding that defendant corporation's maintenance of a checking account in New York did not amount to "doing business" in the state).

### 2. Unrelated Dispute Resolution Clauses Do Not Establish Jurisdiction

Respondents' submission to dispute resolution in New York under prior unrelated agreements is not a broad submission to general jurisdiction in New York. Petitioners cite to the dispute resolution clauses of two separate and unrelated transactions, the Black Gold project financing contracts and the two ECAs, in an attempt to establish some basis for general jurisdiction. *See* Petitioners' Response at 9. But New York courts have consistently held that a submission to resolve disputes either in the courts of New York or through arbitration in New York is limited by the scope of the consent. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007) (applying "general contract law principles and federal precedent to discern the . . . scope of forum [selection] clause[s]"); *Sterling Nat'l Bank & Trust Co. of N.Y. v. S. Scrap Export Co.*, 468 F Supp 1100, 1103 (S.D.N.Y. 1979) (holding that defendants' submission to arbitrate in New York was effective with respect to the specific dispute governed by the arbitration clause and "not with regard to any other dispute that may arise between the parties"); *Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*, 765 N.Y.S.2d 575 (1st Dep't 2003) (finding no personal jurisdiction over a foreign corporation, though the corporation had submitted to New York jurisdiction with the plaintiff under a different agreement, as the scope of the prior submission was limited to that litigation, and there was not a substantial relationship between the prior transaction and the current claim asserted); 29 N.Y. Jur. 2d Courts and Judges § 591.

The dispute resolution clauses for the Black Gold project and the ECAs are clearly limited in scope only to causes of action that arise from those agreements, and do not

5

constitute a submission to general jurisdiction in New York. *Compare* Brenner Dec'l at Ex. A (Credit Agreement § 12.07) *with* Declaration of Joseph P. Moodhe ("Moodhe Dec'l") at Exs. 3-4 (ECAs § 22.2) [Docket Nos. 21-3, 21-4]. This proceeding is predicated on the Shipbuilding Contracts, and does not concern the financing provided to Black Gold by the Senior Lenders, to which Petitioners are not party, *see infra* at 7, or the ECAs, which the Petitioners previously argued in another proceeding are not related to the Shipbuilding Contracts, *see infra* at 8.

Under New York law, neither the Black Gold project accounts nor the unrelated dispute resolution clauses amount to "doing business" in the state or a submission to general jurisdiction, and Respondents are not subject to general personal jurisdiction in New York.

B. **Petitioners Fail To Demonstrate That The Black Gold Project Or The ECAs Are An "Articulable Nexus" Sufficient To Establish Specific Jurisdiction**

Respondents' participation in the Black Gold project financing and the ECAs do not subject Respondents to specific personal jurisdiction in New York for confirmation of an interim award under the Shipbuilding Contracts. To establish specific jurisdiction under CPLR 302(a)(1), an articulable nexus must exist between the business transacted and the cause of action sued upon. *See McGowan v. Smith*, 419 N.E.2d 321, 323 (N.Y. 1981). Put differently, there must be "a 'substantial relationship' between [the purposeful] activities and the transaction of out of which the cause of action [arises]." *Talbot v. Johnson Newspaper Corp.*, 522 N.E.2d 1027, 1028 (N.Y. 1988) (*quoting McGowan*, 419 N.E.2d at 323); *see also Johnson v. Ward*, 829 N.E.2d 1201-03 (N.Y. 2005) (finding too insubstantial a relationship between negligence claim and defendant's possession of a New York license and registration).

The Black Gold project financing does not bear a substantial relationship to the Shipbuilding Contracts that are the basis for the UK interim awards. Petitioners are not a party to any of the Black Gold project financing contracts, which are primarily between Black Gold and

6

the Senior Lenders, with Portigon serving as Administrative Agent and Deutsche Bank as Collateral Agent. *See* Brenner Dec'l at Ex. B (Credit Agreement at 1). In fact, Respondents are merely subsidiary guarantors of the loan undertaken by their parent Black Gold. *See id.* Moreover, the Shipbuilding Contracts were entered into by the Petitioners and Respondents alone, one year prior to the Black Gold project financing contracts, and do not involve Black Gold or any of the Senior Lenders or their Agents. *Compare* Moodhe Dec'l at Ex. 2 (BDL Shipbuilding Contract at 1); Declaration of Joseph P. Moodhe ("Moodhe SDL Dec'l") at Ex. 2 BDL Shipbuilding Contract at 1), *CIMC Raffles Offshore (Singapore) Pte v. Soratu Drilling LLC*, No. 13 Civ. 4933 (S.D.N.Y. Aug. 27, 2013) *with* Brenner Dec'l at Ex. B (Credit Agreement at 1). Since Petitioners are not a party to the Black Gold project financing documents, which also do not mention the Shipbuilding Contracts, any relationship between the two contracts is too minimal to constitute the articulable nexus necessary to support specific jurisdiction under CPLR 302(a)(1). *See J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 551 (S.D.N.Y. 2001) (finding no articulable nexus where plaintiff sued on one contract (Asset Sale Agreement) and asserted specific jurisdiction based on another contract (Fee Agreement), where plaintiff was not a party to the Fee Agreement, there was minimal connection between the two agreements, and the Fee Agreement did not mention the Asset Sale Agreement); *see also A.C.K. Sports, Inc. v. Doug Wilson Enters., Inc.*, 661 F. Supp. 386, 391 (S.D.N.Y. 1987) (holding that defendant's appearance in New York pursuant to a contract was not "transacting business" so as to confer specific jurisdiction for breach of a separate agency agreement).

Similarly, the ECAs do not provide a basis for specific jurisdiction in this case. The Petitioners have repeatedly stated that the Shipbuilding Contracts and the ECAs are unrelated. In Petitioners' "Pre-Hearing Submission" in the New York arbitration being enforced

7

in another action before this Court, Petitioners argued that "the ECAs and the Shipbuilding Contracts were negotiated separately and drafted to reflect their independence from each other." Schahin Dec'l at Ex. A at 22. In a section of their submission titled "Separate Agreements," Petitioners stated that the ECAs and the Shipbuilding Contracts "were separate legal documents that operated on their own terms." *Id.*; *see also* Schahin Dec'l at Ex. B at 6 (Claimants' Reply To Respondents' Memorial (stating that the "Shipbuilding Contracts and the ECAs are separate agreements and the rights and liabilities under them are completely different.")). According to Petitioners, the contracts' separateness was evident by their dispute resolution clauses, which provide for different dispute resolution methods, in different countries, applying different laws. *Id.* at 24. Petitioners' own statements in the New York arbitration show that there is no substantial relationship between the ECAs and the Shipbuilding Contracts that would allow for specific personal jurisdiction based on an articulable nexus. *See Mattgo Enters., Inc. v. Aaron*, 374 F. Supp. 20, 23 (S.D.N.Y. 1974) (*cited with approval in Merrill Lynch, Pierce, Fenner & Smith Inc. v. Noonan*, 92 CIV. 3770 (SWK), 1992 WL 196741 (S.D.N.Y. Aug. 3, 1992) (holding that to establish specific jurisdiction, "the cause of action must arise out of the act, that act must be related to the contract in suit, and not to earlier contracts," and that though the defendant may have had sufficient contacts under a prior contract with the plaintiff, "that activity is not relevant to a claim founded upon a 'cause of action arising from' a subsequent contract")).

Because neither the Black Gold project financing nor the ECAs have a substantial relationship to the Shipbuilding Contracts, out of which the UK interim awards and this cause of action arise, there is no articulable nexus between them to establish specific personal jurisdiction.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS PROCEEDING

In their response, Petitioners argue that the Court should not dismiss or stay this proceeding because the UK interim awards finally determined a discrete claim and, according to Petitioners' English lawyer, the Respondents' appeal is "weak." Neither assertion is correct.

The UK interim awards only partially resolved Petitioners' breach of contract claims, and should not be recognized until the Tribunal issues its final award. Arguing that all of Petitioners' claims have been adjudicated by the Tribunal, Petitioners state that "the Tribunal determined it did not have the jurisdiction to grant . . . SDL's deferred Contract Price." Petitioners' Response at 18. The UK interim awards themselves belie this statement, as the Tribunal explicitly declined to decide the jurisdictional issue since it was not one of the Preliminary Issues. *See* Lidstrom Dec'l ¶ 7(b). In fact, Petitioners took the opposite view before the Tribunal, arguing that a determination of the SDL deferred Contract Price is within the Tribunal's purview. *See* Lidstrom Dec'l ¶ 7(d). In addition, Petitioners' argument that the change orders are a claim separate from the underlying Shipbuilding Contracts is incorrect. The change orders are intimately tied to the Shipbuilding Contracts, which contemplate and allow for them in Article VI(1)(i). Among other things, the Shipbuilding Contracts define the terms and obligations relating to change orders, such as when an upfront payment was required. Moodhe Dec'l at Ex. 2 (Article III(5)(i)); Moodhe SDL Dec'l at Ex. 2 (Article III(5)(i)). The Petitioners' demand for payment of the change orders is a breach of contract claim that is part of their unresolved claim for the SDL deferred Contract Price under the Shipbuilding Contracts. The UK interim awards thus failed to fully determine Petitioners' claim, and should not be confirmed by this Court.

Even if the UK interim awards may be recognized, staying confirmation of the awards is necessary to avoid inconsistent decisions. Respondents' stay application and appeal to the UK High Court are based on the unquestionable tenet that the Petitioners' concession as to a

9

bank guarantee should not have been disregarded by the Tribunal. Lidstrom Dec'l ¶ 10. The Petitioners' own conduct demonstrates that they do not view the appeal as "weak," as they did not move for summary judgment in that proceeding. Lidstrom Dec'l ¶ 15. Instead, they agreed to a one day hearing on the merits, which is scheduled for November 8, 2013. *Id.* ¶ 17. In addition, a hearing on the stay application is scheduled for September 19, 2013. Granting recognition of an award set to be heard on appeal, and potentially stayed, in its country of origin would present issues of comity expressly contemplated by the Second Circuit as a ground to stay recognition. *See Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310 (2d Cir. 1998). In light of the possibility of an inconsistent result, this confirmation proceeding should be stayed until the determination of the stay application and appeal pending before the UK High Court.[2] *See Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*, No. 90 Civ. 4169 (JFK), 1990 WL 213030 (S.D.N.Y. Dec. 18, 1990), *cert. denied*, 504 U.S. 910 (1992) (granting stay to allow Nigerian courts to resolve issue of Nigerian law); *cf. MGM Prods. Grp., Inc. v. Aeroflot Russian Airlines*, No. 03 Civ. 0500 (RMB), 2003 WL 21108367 (S.D.N.Y. May 14, 2003), *cert. denied*, 543 U.S. 956 (2004) (*cited by* Petitioners) (denying a stay where the party seeking the stay had already unsuccessfully sought a stay in the overseas proceeding, demonstrating an intent to hinder or delay).

## CONCLUSION

For the reasons stated herein, and in the Motion to Dismiss, Respondents respectfully request that the Court dismiss CIMC's Petition to Confirm a Foreign Arbitration Award and For an Entry of Judgment or, in the alternative, stay the proceedings until the conclusion of the appeals process currently pending in the United Kingdom.

---

[2] Petitioners' request that this Court require a bond if a stay is granted is inequitable, as the very appeal currently pending in the United Kingdom turns upon Petitioners' decision to renege on its promise to provide security in the amount of the UK interim awards. *See* Lidstrom Dec'l ¶ 11.

10

Dated: New York, New York
September 3, 2013

Respectfully submitted,

Linklaters LLP

By:   /s/ Paul S. Hessler
Paul S. Hessler
Patrick Ashby
1345 Avenue of the Americas
New York, NY 10105
(212) 903-9000
(212) 903-9100 (fax)

*Counsel for Baerfield Drilling LLC and Soratu Drilling LLC*

11