UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

CIMC RAFFLES OFFSHORE (SINGAPORE) PTE.
LTD. and YANTAI CIMC RAFFLES OFFSHORE
LIMITED,

                              Petitioners,

               v.

BAERFIELD DRILLING LLC,
SORATU DRILLING LLC

                           Respondents.

13 Civ. 4932 (JSR)

13 Civ. 4933 (JSR)

-------------------------------------------------------------x

## DECLARATION AND EXPERT OPINION ON ENGLISH LAW OF
## LARS THOMAS LIDSTROM

I, Lars Thomas Lidstrom, declare under penalty of perjury under the laws of the United States

of America that the foregoing is true and correct, pursuant 28 U.S.C. § 1746:

**I.**      **SUMMARY OF QUALIFICATIONS OF AUTHOR**

      1.  I am a solicitor of the Senior Courts of England and Wales, a solicitor of

the High Court of the Special Administrative Region of Hong Kong, a barrister and solicitor

of the Supreme Court of Victoria and the High Court of Australia, and a partner in the firm of

Linklaters LLP, One Silk Street, London, EC2Y 8HQ.  I have practiced law in the United

Kingdom for seventeen years.  I was admitted to practice law in Australia in 1990.  I

specialize in commercial litigation and arbitration matters, with a particular focus on matters

for clients in the energy and finance industries.

      2.  I act for Baerfield Drilling LLC ("BDL") and Soratu Drilling LLC

("SDL") in two arbitrations commenced against my clients by CIMC Raffles Offshore

(Singapore) Pte. Ltd and Yantai CIMC Raffles Offshore Limited (collectively, "CIMC

Raffles").  Mr. Hugh William Amherst Cecil, who has given a Declaration and Expert

Opinion as executed on August 27, 2013 on behalf of CIMC Raffles ("the Cecil declaration"), represents CIMC Raffles in the same arbitrations. The arbitrations are taking place in London, United Kingdom, and are being heard concurrently and pursuant to the 2006 Terms of the London Maritime Arbitrators Association ("the Arbitrations").

3. On June 21, 2013 my clients filed applications with the English Commercial Court: (a) under section 68 of the English Arbitration Act 1996 ("the 1996 Act") to challenge two Interim Final Arbitration Awards dated May 24, 2013 issued by the Tribunal in the Arbitrations ("the Awards"), on the grounds of serious irregularity affecting the Tribunal, the proceedings and the Awards (the "Challenge Application"); and (b) for an order that enforcement of paragraph (ii) on page 3 of the Awards be stayed pending the determination of the Challenge Application (the "Stay Application") (together, the "Applications").

4. The facts and matters set out in this declaration and expert opinion on English law are within my own knowledge unless otherwise stated, and I believe them to be true. Where I refer to matters of which I do not have personal knowledge, I identify the source of my information and belief, and they are true to the best of my information and belief.

5. I make this declaration and expert opinion on English law in order to respond to the Cecil declaration, and to correct certain mischaracterizations of the Awards and the Applications made by Mr. Cecil in the Cecil declaration.

6. I do not, in this statement, respond to every point made in the Cecil declaration, and instead confine myself to addressing the most pressing and relevant points in the Cecil declaration with which I disagree. For the avoidance of doubt, the mere fact that a particular fact or matter in the Cecil declaration is not specifically contradicted in this

declaration and expert opinion on English law should not be interpreted as an acceptance of that fact or matter.

## II.   OPINION

### A.   The Awards

7.   At paragraph 5 of the Cecil declaration, Mr. Cecil states that "In the SDL Award, the Tribunal <u>determined</u> that it did not have jurisdiction to hear CIMC Raffles' claim to collect part of the SDL Contract Price which was deferred under a security assignment dated 28 October 2010.  CIMC Raffles will be commencing a UK High Court action to collect those sums under the security assignment." (emphasis added).  For the following reasons, Mr. Cecil's statement is inaccurate:

> (a) the Awards determine certain Preliminary Issues.  The matter described by Mr. Cecil at paragraph 5 of the Cecil declaration was not one of those Preliminary Issues;

> (b) on the contrary, at paragraph 88 of the Tribunal's Reasons for Awards on Preliminary Issues ("the Reasons") the Tribunal states that the matter raised by Mr. Cecil at paragraph 5 of the Cecil declaration was an issue "which was debated but we are not presently asked to decide".  A copy of the Reasons is attached hereto as Exhibit A for the Court's reference;

> (c) further, one of CIMC Raffles' arguments in the Arbitrations is that,[1] even if the Tribunal has no jurisdiction under the underlying contracts between BDL, SDL and CIMC Raffles to hear CIMC Raffles' claim for the deferred

---

[1]   See, by way of example, paragraph 40(2) of the Amended Points of Reply and Defense to Counterclaim, dated December 21, 2012, and filed by CIMC Raffles in the arbitration commenced against SDL.  A copy of that Amended Points of Reply and Defense to Counterclaim is attached hereto as Exhibit B for the Court's reference.

portions of the SDL Contract Price, it has ad hoc jurisdiction to hear the claims because SDL voluntarily referred the parties' dispute on this point to the Tribunal (for the avoidance of confusion, I should clarify that that is disputed by SDL). This is another argument which was not one of the Preliminary Issues;

(d) paragraph 5 of the Cecil declaration is at odds with CIMC Raffles' current position in the Arbitrations. The Arbitrations were commenced by CIMC Raffles on December 22, 2011. The Preliminary Issues were determined (with full reasons) on May 24, 2013. CIMC Raffles have taken no steps to withdraw or discontinue the claims they have made in the Arbitrations for sums deferred under the security assignment dated October 28, 2010. Even if it is CIMC Raffles' intention to apply to withdraw those claims from the Arbitrations, as matters stand no such application has been made and CIMC Raffles maintains its claims in full. If it is indeed CIMC Raffles' intention to withdraw those claims, my clients look forward to receiving confirmation of that from CIMC Raffles and Mr. Cecil; and

(e) I confirm that CIMC Raffles have taken no steps to serve a UK High Court action in connection with the security assignment described by Mr. Cecil, and I am not aware of any such action being commenced.

8. In short, the Awards have not finally determined all of CIMC Raffles' claims against BDL and SDL. In addition to CIMC Raffles' claims for certain sums deferred under the October 28, 2010 security assignment, SDL and BDL's significant counterclaims also remain on foot, and will be heard together with CIMC Raffles' remaining claims at a six-

4

week merits hearing of the Arbitrations, in London, scheduled to commence on March 3,
2014.

**B.     Strength of the Applications**

9.   At paragraph 11 of the Cecil declaration, Mr. Cecil states that the merits of
the Applications "are very weak". That is a nakedly partisan statement and is a
mischaracterization of the Applications. Even a brief review of the Challenge Application
reveals it to be a strong and credible one. I explain this further at (inter alia): (i) paragraph
33.1 of my First Witness Statement before the High Court, dated June 21, 2013 (attached
hereto as Exhibit C for the Court's reference) ("Lidstrom 1"); (ii) paragraph 17 of my Third
Witness Statement before the High Court, dated August 9, 2013 (attached hereto as Exhibit E
for the Court's reference) ("Lidstrom 3"); and (iii) paragraph 19.1 of my Fourth Witness
Statement before the High Court, dated August 16, 2013 (attached hereto as Exhibit F for the
Court's reference) ("Lidstrom 4").

10. With respect to the suggestion made at paragraph 14 of the Cecil
declaration that "the record clearly demonstrated that the Tribunal gave the Respondents
opportunities during oral argument to address the point", as I explain at paragraphs 10-13 of
Lidstrom 3, Mr. Cecil's reliance on the record is misplaced: the record does not provide any
support for the conclusions Mr. Cecil seeks to draw and CIMC Raffles' argument to the
contrary does not withstand the slightest scrutiny. On the contrary, that conclusion is based
on a selective and ex post facto reading of the transcripts of the Preliminary Issues Hearing
(which I attended) and a deliberate disregard for all events (including CIMC Raffles' own
pleaded admission) occurring prior to and after the Preliminary Issues Hearing. The truth of
the matter is that at all times prior to and throughout the Preliminary Issues hearing, CIMC
Raffles' position was that if the Tribunal ruled in its favor and made monetary awards as

requested, BDL and SDL's obligation to pay those awards was contractually subject to the provision by CIMC Raffles of a bank guarantee in an equivalent amount pending the determination of BDL and SDL's cross-claims.  I stand by the statement I made at paragraph 13 of Lidstrom 3, that "[T]he reality is that [CIMC Raffles] have (for reasons best known to themselves) decided unilaterally to renege on an oft-repeated admission and assurance, and are now seeking opportunistically to dress up that volte-face as procedurally and textually justified."

11. In expressing his view that the Applications are "weak", Mr. Cecil appears in reality to be relying on a belief that my clients cannot demonstrate that the Tribunal committed irregularities that have caused or will cause my clients the requisite degree of injustice required by the 1996 Act and the applicable case law.  The basis for Mr. Cecil's belief is flawed and difficult to understand.  I will explain the position in more detail below but, in summary, if the Tribunal had determined the Preliminary Issues in accordance with CIMC Raffles' admission (and the parties' agreed common position) that any payment to CIMC Raffles was subject to the provision of counter-security, BDL and SDL's obligation to pay the monetary awards made by the Tribunal would have been subject to the provision of a bank guarantee.  In circumstances where BDL and SDL have very substantial cross-claims against CIMC Raffles which have yet to be determined, the provision of such security is of the first importance to BDL and SDL.  It is an unfortunate reality that BDL and SDL may have difficulty enforcing the UK arbitration awards which they ultimately expect to be made in their favor on those cross-claims against CIMC Raffles in China.  To have no recourse to a bank guarantee for any part of their claims in such circumstances would represent a serious potential detriment to BDL and SDL.

12. To explain those points in more detail, at paragraphs 25-28 of Lidstrom 1 I explain the technical basis for my opinion that the Tribunal, the Arbitrations and the Awards are affected by serious irregularities within the meaning of section 68 of the 1996 Act.  In my opinion, the Tribunal:

> (a)     failed to comply with its general duty under section 33 of the 1996 Act, for the purposes of section 68(2)(a) thereof, in that it did not act fairly and impartially between the parties, giving each party a reasonable opportunity of putting its case and dealing with that of its opponent and/or did not adopt procedures suitable to the circumstances of the individual case;

> (b)     exceeded its powers, for the purposes of section 68(2)(b) of the 1996 Act; and/or;

> (c)     failed to conduct the proceedings in accordance with the procedure agreed by the parties, for the purposes of section 68(2)(c) of the 1996 Act (namely  that set out in the 2006 Terms of the London Maritime Arbitrators Association, and in particular paragraph 3).

13. I discuss those serious irregularities further at paragraph 16 of my Second Statement before the High Court, dated July 3, 2013 (attached hereto as Exhibit D for the Court's reference) ("Lidstrom 2").  Moreover, at paragraph 17 of Lidstrom 3 I state that:

> "The Tribunal has plainly erred in the conduct of the Preliminary Issues Hearing and in its approach to the Awards by ordering [BDL and SDL] to make payment pursuant to paragraph (ii) on page 3 of the Awards in the absence of a bank guarantee without having heard the necessary submissions and/or made the necessary findings to allow it to disregard and/or give no effect to the pleaded admission and/or concession and/or offer by [CIMC Raffles] that they would and/or were required to provide a bank guarantee to secure [BDL and SDL's] cross-claims.  The Tribunal ought to have determined Preliminary Issues 7 and 8 in accordance with the common ground between the parties that any payment by [BDL and SDL] would be subject to provision of a bank guarantee by [CIMC Raffles]."

14. As I explain at paragraph 29 of Lidstrom 1, paragraph 17 of Lidstrom 2, and paragraph 14 of Lidstrom 3, the serious irregularities I describe above have caused or will cause substantial injustice to my clients. As I state at paragraph 14 of Lidstrom 3:

> "As explained at paragraph 29 of Lidstrom 1, it is [BDL and SDL's] position that in the absence of the serious irregularities described in Lidstrom 1 and 2 (see particularly paragraph 28 of Lidstrom 1 and paragraph 16 of Lidstrom 2), the Tribunal would necessarily have found that that the payment to be made by [BDL and SDL] under paragraph (ii) of page 3 of the Awards was conditional on provision of a bank guarantee. This is because acting properly, and without serious irregularity, the Tribunal ought to have determined Preliminary Issues 7 and 8 in accordance with [CIMC Raffles's] pleaded admission (which they never sought to withdraw) that they were required to provide a bank guarantee and/or in accordance with the agreement (or common ground) between the parties that payment by [BDL and SDL] would be conditional on provision of a bank guarantee. *It is, and ought to be obvious, that a bank guarantee for approximately US$20 million is infinitely preferable to the absence of such security, especially in circumstances where the value of [BDL and SDL's] counterclaims far exceeds [CIMC Raffles'] claims.*" (emphasis added)

15. In addition, if Mr. Cecil and his clients were really of the view that my clients' application is "very weak", I would certainly have expected CIMC Raffles to apply for summary dismissal of the Challenge Application, pursuant to paragraph O8.8 of the English Commercial Court Guide ("the Guide").[2]   Paragraph O8.8 of the Guide sets out a procedure by which a party which believes that a challenge under section 68 of the 1996 Act to an arbitral award made in its favor is "weak" may apply to the court to have the challenge summarily dismissed without a hearing.  If a section 68 challenge is "very weak" then this is

---

[2]   The Guide is published with the approval of the Lord Chief Justice and the Head of Civil Justice in consultation with the judges of the English Admiralty and Commercial Courts.  As explained at paragraph A1.2 of the Guide, it is intended to provide guidance about the conduct of proceedings in the Admiralty and Commercial Courts and, within the framework of the secondary legislation setting out the rules pursuant to which civil litigation is conducted in England and Wales, known as the "Civil Procedure Rules", to establish the practice to be followed in those Courts.  I should explain that most challenges to arbitral awards are commenced in the Commercial Court (as was the Challenge Application in this case), and it is thus the Guide which generally regulates the applicable practice and procedure.  See further Rule 62.3(3) and Practice Direction 62 paragraph 2.3.

a quick and relatively inexpensive method of getting the challenge terminated. By contrast, if the section 68 challenge is meritorious then the application is liable to dismissed, and the party seeking to defend the award ordered to pay the challenging party's legal costs, thus resulting in additional delay and expense. Parties will not therefore usually adopt the procedure under paragraph O8.8 in the case of challenges which they recognize have merit.

16. O8.8 of the English Commercial Court Guide provides as follows:

"If the nature of the challenge itself or the evidence filed in support of it leads the court to consider that the claim has no real prospect of success, the court may exercise its powers under rule 3.3(4) and/or rule 23.8(c) to dismiss the application without a hearing. If a respondent considers that the case is one in which the court could appropriately deal with the application without a hearing it should within 21 days file a respondent's notice to that effect together with a skeleton argument (not exceeding 15 pages) and any evidence relied upon."

17. I confirm that CIMC Raffles did not file a respondents' notice pursuant to O8.8 of the English Commercial Court Guide, applying to the court to exercise its powers to dismiss my clients' application summarily (nor any skeleton argument or evidence in support of such an application). On the contrary, CIMC Raffles have agreed to the Challenge Application being listed for a full day's hearing in front of a judge of the English Commercial Court: that hearing to take place on November 8, 2013. The Stay Application is to be heard by a judge of the English Commercial Court on September 19, 2013.

18. The fact that CIMC Raffles has not sought to invoke the summary procedure in response to the Challenge Application clearly demonstrates that it recognizes that my clients' Challenge Application does have a "real prospect of success", and is – at the

9

very least – sufficiently strong to warrant a full day's hearing in front of a judge of the

English Commercial Court.


Dated:     London, United Kingdom
           September 3, 2013

                                    Signed at London, United Kingdom under
                                    penalty of perjury under the laws of the
                                    United States of America,

                                    By:   _Thomas Lidstrom_
                                    Lars Thomas Lidstrom